UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROYCE REDELL FLOWERS NASH II,

    Plaintiff,

-vs-                                                    Case No: 21-CV-101

CITY OF MILWAUKEE, and
MARIA MONTEAGUDO, in her individual
capacity.

    Defendants.

## COMPLAINT

### I.    NATURE OF ACTION

Royce Redell Flowers Nash II brings this civil action under Title VII, 42 U.S.C. § 1983 and 42 U.S.C. § 1981 against the City of Milwaukee County and Maria Monteagudo. Specifically, Mr. Nash, who is African-American, alleges that he was subjected to differential terms and conditions of his employment with the City of Milwaukee and terminated because of his race and gender and because he opposed discriminatory practices in the workplace.

### II.    JURISDICTION AND VENUE

1.    The court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 1343(a)(3) (42 U.S.C. § 1983 jurisdiction). The Eastern District of Wisconsin is the proper venue for this action under 42 U.S.C. §

1391 (b) (2) because the Plaintiff's claims arose within the geographical boundaries of the Eastern District of Wisconsin.

### III. PARTIES

2.  The plaintiff, Royce Redell Flowers Nash II, is an adult resident of the State of Wisconsin currently residing in the City of Milwaukee.

3.  The defendant City of Milwaukee ("City") is a Wisconsin unit of local government, with a principal address of 200 E. Wells Street, Room 205, Milwaukee, Wisconsin 53202, with the capacity to sue and be sued in this Court.

4.  The defendant, Maria Monteagudo, is an adult resident of the State of Wisconsin, with the capacity to sue and be sued. At all times relevant to the claims alleged in this Complaint, Ms. Monteagudo was employed by the City of Milwaukee as the Director of the Department of Employee Relations ("DER"). All actions alleged in this Complaint to have been taken by defendant Monteagudo were taken under color of state law within the meaning of 42 U.S.C. § 1983, and while carrying out her duties as a public officer or employee and within the scope of her employment by the City of Milwaukee, within the meaning of Wis. Stat. § 895.46. Defendant Monteagudo is being sued in this matter in her individual capacity.

### IV. FACTUAL ALLEGATIONS

5.  In early 2017, the City sought applicants for a newly created position, Diversity Recruiter, to serve in the DER.

6. The stated purpose of the Diversity Recruiter position was to "develop and implement recruitment strategies that produce an exceptionally well-qualified and diverse candidate pool to quickly fill vacancies within the general City Service."

7. At the time, DER employed approximately 40 individuals, none of whom were African American men; in fact, DER had not employed an African American male since at least 2005.

8. In July 2017, plaintiff was hired as the Diversity Recruiter. He was the only African American male and one of four African Americans employed by DER.

9. Throughout his employment in this position, plaintiff was under the indirect supervision of Monteagudo, who at all times supervised plaintiff's direct supervisor, Kristin Urban.

10. With little guidance from his supervisors, plaintiff met or exceeded all legitimate expectations of the Diversity Recruiter position. As required under City policy for new employees, plaintiff received a 120-day performance evaluation in November 2017. The review was effusive in its praise for plaintiff's work, applauding his production, knowledge, initiative and dependability, among others.

11. Despite his success in the new position, plaintiff grew concerned about the environment among his coworkers at DER, specifically what he

perceived to be a negative attitude toward he and his African American colleagues from Ms. Urban.

12. In early January 2018, plaintiff expressed these concerns to Ms. Urban, stating that she was treating the African-American employees differently than their white counterparts and that her behavior was causing a negative environment for the African American employees. Ms. Urban responded to these concerns by questioning plaintiff's commitment to his job and to DER.

13. Just a few days after this meeting with Ms. Urban, plaintiff met with Defendant Monteagudo. He explained to her that he felt threatened and intimidated by Ms. Urban's statements to him and further expressed and described his concerns about her discriminatory treatment of him (and implicitly others) and the possibility of retaliation. He told her that he did not want to cause any problems, but simply wanted an opportunity to do his job, which was important to him. Monteagudo assured him that she understood he was new to the position and City employment but that she was confident in his skills, that he was doing great things that his job was not in jeopardy. The meeting ended in a hug.

14. From that point forward, however, Ms. Urban's behavior became hostile towards plaintiff. She regularly questioned his motivation to work and commitment to working for the City, overloaded him with menial tasks and responsibilities unrelated to his work as Diversity Recruiter, and otherwise bullied and ostracized him.

4

15. The hostility from Ms. Urban intensified throughout February and in late February 2018, plaintiff again met with Monteagudo. During that meeting, he expressed to Monteagudo that DER, under Ms. Urban's leadership, was replete with bullying, exclusion, intimidation, discrimination, sexism and racism and that he was the target of this treatment from Ms. Urban. He explained that it had only gotten worse since he raised concerns of her discriminatory treatment the previous month and that he believed she was retaliating against him by intentionally trying to overload him with menial tasks and responsibilities in order to get him to err and then build a case for termination against him. He also expressed his belief that DER and Ms. Urban were not committed to creating diversity and did not want him to succeed or to allow him to do meaningful work in diversity and that there was a cultural conflict in DER.

16. Monteagudo responded to plaintiff by telling him that there was not a cultural conflict at DER until he arrived. She urged him to not bring his concerns to the "second floor," referring to her superiors in City government, until she had a chance to fix the problem. She expressed that there may be an opportunity for him to move to a different position that involved community outreach and was not under Ms. Urban's supervision and asked that he give her time to look into that possibility.

17. Monteagudo did nothing to investigate plaintiff's concerns of discrimination and retaliation from his supervisor, nor did she look into the alternative position as she assured plaintiff she would in order to prevent him

5

from bringing his concerns to City government officials above Monteagudo. Instead, eleven days after their meeting, on March 6, 2020, without warning and without having met or spoken again, Monteagudo suspended plaintiff and then three days later, fired him.

18. During those eleven days, plaintiff received no notice from Monteagudo or anyone else at DER about concerns related to his performance, attendance or behavior.

19. The City and Monteagudo failed completely to take any preventive or corrective measures to address the discrimination and retaliation concerns brought forward by plaintiff, despite multiple opportunities to do so. Rather than take plaintiff's complaints seriously and make any effort to remedy his situation and prevent further mistreatment, the City and Monteagudo endorsed the behavior and ultimately terminated the plaintiff in a continuation of the very discrimination and retaliation that he brought forward.

20. Defendant Monteagudo was the decision maker for the adverse actions taken against the plaintiff, including his termination.

21. Defendant Monteagudo intentionally made the adverse decisions that affected the plaintiff because of the plaintiff's race and sex and because the plaintiff opposed race and sex discrimination.

22. Plaintiff filed a timely complaint with the Wisconsin Equal Rights Division ("ERD") alleging race and gender discrimination and retaliation. On December 3, 2018, the ERD issued an Initial Determination of Probable Cause on all

ten counts of discrimination and retaliation alleged by plaintiff. On November 25, 2020, the Equal Employment Opportunities Commission, on plaintiff's request, issued a Notice Of Right To Sue Letter. Plaintiff has properly met all administrative and procedural prerequisites for filing this action.

## V. FIRST CAUSE OF ACTION

23. For a first cause of action against defendant City of Milwaukee under Title VII, plaintiff realleges each of the preceding paragraphs as though set forth herein.

24. Through the unlawful conduct described in the preceding paragraphs, including but not limited to the continuing pattern of unwelcome, deeply offensive, and harmful behavior towards the plaintiff and the termination of his employment, the City discriminated against plaintiff because of his race in violation of his rights under Title VII.

25. Defendant's conduct as described above caused plaintiff substantial injuries and damages including but not necessarily limited to front and back wage and benefit loss, loss of earning capacity, severe emotional distress, loss of reputation and humiliation and embarrassment. Plaintiff will continue to suffer these injuries and damages in the future.

## VI. SECOND CAUSE OF ACTION

26. For a second cause of against defendant City of Milwaukee under Title VII, plaintiff realleges each of the preceding paragraphs as though set forth herein.

27. Through the unlawful conduct described in the preceding paragraphs, including but not limited to the continuing pattern of unwelcome, deeply offensive, and harmful behavior towards the plaintiff and the termination of his employment, the City discriminated against plaintiff because of his gender in violation of his rights under Title VII.

28. Defendant's conduct as described above caused plaintiff substantial injuries and damages including but not necessarily limited to front and back wage and benefit loss, loss of earning capacity, severe emotional distress, loss of reputation and humiliation and embarrassment. Plaintiff will continue to suffer these injuries and damages in the future.

## VII. THIRD CAUSE OF ACTION

29. For a third cause of action against defendant City of Milwaukee under Title VII, plaintiff realleges each of the preceding paragraphs as though set forth herein.

30. Through the unlawful conduct described in the preceding paragraphs, including but not limited to the continuing pattern of unwelcome, deeply offensive, and harmful behavior towards the plaintiff and the termination of his employment, the City retaliated against plaintiff for opposing discrimination in violation of his rights under Title VII.

31. Defendant's conduct as described above caused plaintiff substantial injuries and damages including but not necessarily limited to front and back wage and benefit loss, loss of earning capacity, severe emotional distress, loss of

8

reputation and humiliation and embarrassment. Plaintiff will continue to suffer these injuries and damages in the future.

## VIII. FOURTH CAUSE OF ACTION

32. For a fourth cause of action against Defendant Monteagudo under 42 U.S.C. Section 1981 plaintiff realleges each of the preceding paragraphs as though set forth herein.

33. Through the unlawful conduct described in the preceding paragraphs, including but not limited to the continuing pattern of unwelcome, deeply offensive, and harmful behavior towards the plaintiff and the termination of his employment, Monteagudo discriminated against plaintiff on the basis of his race, in violation of his rights under 42 U.S.C. Section 1981.

34. The defendant's conduct as described above caused plaintiff substantial damages including but not necessarily limited to front and back wage and benefit loss, loss of earning capacity, emotional distress, loss of reputation and humiliation and embarrassment. Plaintiff will continue to suffer these damages in the future.

## IX. FIFTH CAUSE OF ACTION

35. For a fifth cause of action against Defendant Monteagudo under 42 U.S.C. Section 1981 plaintiff realleges each of the preceding paragraphs as though set forth herein.

36. In engaging in the conduct described in the preceding paragraphs, including but not limited to the continuing pattern of unwelcome, deeply

9

offensive, and harmful behavior towards the plaintiff and the termination of his employment, Monteagudo retaliated against plaintiff for opposing unlawful racial discriminatory practices in violation of his rights under 42 U.S.C. Section 1981.

37. The defendant's conduct as described above caused plaintiff substantial damages including but not necessarily limited to front and back wage and benefit loss, loss of earning capacity, emotional distress, loss of reputation and humiliation and embarrassment. Plaintiff will continue to suffer these damages in the future.

## X. SIXTH CAUSE OF ACTION

38. For a fourth cause of action against Defendant Monteagudo under 42 U.S.C. Section 1983 plaintiff realleges each of the preceding paragraphs as though set forth herein.

39. Through the unlawful conduct described in the preceding paragraphs, including but not limited to the continuing pattern of unwelcome, deeply offensive, and harmful behavior towards the plaintiff and the termination of his employment, Monteagudo discriminated against plaintiff on the basis of his race and gender, in violation of his right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

40. The defendant's conduct as described above caused plaintiff substantial damages including but not necessarily limited to front and back wage and benefit loss, loss of earning capacity, emotional distress, loss of reputation

and humiliation and embarrassment. Plaintiff will continue to suffer these damages in the future.

### XI. CAUSE OF ACTION – PUNITIVE DAMAGES

41. Defendant Monteagudo's actions as alleged above were intentional and undertaken with malice and reckless indifference to plaintiff's rights under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 thereby entitling plaintiff to an award of punitive damages.

### XII. MUNICIPAL LIABILITY – INDEMNIFICATION

42. Defendant City of Milwaukee is responsible to defend this action and to satisfy any judgment entered against Defendant Monteagudo pursuant to § 895.46, Wis. Stats., regardless of whether the wrongful acts alleged herein were carried out pursuant to a custom or policy of the City of Milwaukee.

### XIII. JURY DEMAND & PRAYER FOR RELIEF

The plaintiff demands that the issues in the above-captioned matter be tried by a jury of twelve persons.

WHEREFORE, the plaintiff demands judgment as follows:

a. Back wages and benefits;

b. Front pay and benefits;

c. Loss of earning capacity;

d. Compensatory damages in an amount to be determined;

e. Punitive damages against the individual defendant;

  f. An order finding that the defendants violated plaintiff's rights under Title VII, 42 U.S.C. § 1981, and the Equal Protection Clause as guaranteed by 42 U.S.C. § 1983;

  g. Reasonable attorney fees and costs incurred in bringing this action as well as reasonable fees and costs incurred during the administrative proceedings before the Equal Rights Division; and

  h. Such other relief as the Court may deem just and proper.

Dated at Monona, Wisconsin this 25th day of January, 2021.

        Respectfully submitted:

        FOX & FOX, S.C.
        ATTORNEYS FOR PLAINTIFF

        <u>s/ Peter J. Fox</u>
        Peter J. Fox
        SBN:  1037925
        124 W. Broadway
        Monona, WI 53716
        T:  608/258-9588
        F:  608/258-9105
        pfox@foxquick.com